**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 13, 2019*
Decided March 14, 2019

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1352

| | |
|---|---|
| GREGORY DAVID JONES,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 1:17-cv-01344-EIL |
| DUSTIN BAYLER, et al.,<br>    *Defendants-Appellees*. | Eric I. Long,<br>*Magistrate Judge*. |

**O R D E R**

Gregory D. Jones, an inmate at Pontiac Correctional Center, sued several prison employees for allegedly waging a campaign of retaliation against him after he named two correctional officers in the death of an inmate in protective custody. He claimed that the alleged retaliation, which included sexual and physical assaults as well as threats, violated his First Amendment right of free speech. Fearing for his safety, he

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

moved several times for a preliminary injunction or "protective order," seeking a transfer away from Pontiac. The district court denied his motions, and Jones brought this interlocutory appeal. *See* 28 U.S.C. § 1292(a)(1). But a later superseding order of the district court has made this appeal moot, so we dismiss.

According to Jones's complaint, officers at Pontiac Correctional Facility started to harass him on the day the Illinois State Police first interviewed him about the death of another inmate. Jones told the police that the inmate was killed by two correctional officers, a Lieutenant Bolden and an Officer Deal. From that point on, he says, other guards threatened and intimidated him, and the worst by far was Officer Bayler, the sergeant of Jones's cell block. Jones says Bayler accosted him, stole his medication, shook down his cell, and—after Jones's second interview with state police—enlisted other officers in this campaign of harassment. Jones alleges that Bayler ordered Officer Copeland to sexually assault him, and later, Bayler told Jones to keep his mouth shut and attempted to start a fight with him. According to his complaint, Jones filed several emergency grievances with the warden, Michael Melvin, who took no action even after Jones reported the sexual assault. Officer Bayler told Jones that there was nothing Jones could do to him.

The district court screened Jones's complaint under 28 U.S.C. § 1915A and allowed the claims against Bayler (for retaliation) and the warden (for failure to protect) to proceed. Jones filed several motions seeking a "protective order," a temporary restraining order, or a preliminary injunction. Jones asked the court to order his transfer to another prison in the Illinois Department of Corrections ("IDOC") system, but not to Menard, Lawrence, or Pinckneyville facilities. The district court (at the time, Judge Bruce) summarily denied the initial motions because "prison designations and cell assignments are the type of day-to-day judgments that rest firmly within the discretion of prison officials." The judge denied Jones's next requests as well, again explaining that the court would not "relocate him to a facility of his own choosing." Further, the court briefly explained, Jones sought protection from non-defendants and did not show that he had a likelihood of success on the merits or that he would suffer irreparable harm without an injunction.

In the first of two motions that led to the order now under review, Jones protested that he was not seeking a transfer to an institution "of his own choosing," but wanted to avoid the prisons that share staff with Pontiac. He alleged that the "institutional campaign of harassment" continued and that one guard—the daughter of Lieutenant Bolden—had recently told him, "all we have to do is wait." He further

alleged that Melvin refused to move him from his current cell block to another protective custody wing to keep him away from Bayler. Without an injunction, Jones claimed, he would not "survive." In the next motion, Jones reported that the warden now had assigned Lieutenant Bolden "direct authority" over him and that Bolden had ordered another guard to sexually assault Jones.

For the first time, the district court ordered the defendants to respond to Jones's motions. They argued primarily that the type of mandatory injunction Jones requested was overly broad and "highly intrusive" to the prison system, and further that he lacked evidence of his claims and had not demonstrated probable irreparable harm. Despite the disputed factual issues, the district court failed to hold an evidentiary hearing to resolve the dispute. Instead, the district court denied the motions without an evidentiary hearing. The court primarily concluded that the relief Jones sought was "against public policy" because the administration of a prison system—including inmate-housing decisions—is the job of prison administrators, not the judiciary. The district court also explained that Jones was seeking a "broad, sweeping injunction" about many individuals "engaged in a grand conspiracy." The district court then asserted (without basis, it seems) that Jones had accused the warden of ordering an inmate to sexually assault him. The court went on to explain that there was no way for a court to assure Jones's safety because all prisons are "dangerous places." In any case, Jones had "no evidence" other than his unverified statements, and so he had failed to meet his burden to show a likelihood of success on the merits of his claims. On February 15, 2018, Jones filed a timely interlocutory appeal to challenge the denial of the preliminary injunction. *See* 28 U.S.C. § 1292(a)(1).

In the meantime, the proceedings in the district court continued, and in June, the parties consented to the jurisdiction of Magistrate Judge Long. Jones then filed several new motions again asking for a preliminary injunction and asking the district court to reconsider the denial of previous motions. Jones did not ask the court to stay a ruling pending the outcome of this appeal, nor did the court decide to do so sua sponte. Instead, in July 2018, Magistrate Judge Long took up the three pending motions and denied them because, he briefly explained, he would not "micromanage" IDOC, and Jones "failed to show a likelihood of success on the merits." Magistrate Judge Long then summarily denied the next "emergency supplemental motion for injunction," pointing to his prior ruling. Jones then filed another batch of motions, supplements, and briefs between August and October. In support, he filed an affidavit in which he attested to a number of the incidents he had described in his complaint and motions, including the sexual assault that Officer Bayler ordered. On October 23, 2018, Magistrate Judge Long

denied the motions in a written order explaining that (1) it would be "against public policy" to interfere with IDOC placement decisions; (2) "Pontiac's staffing decisions" could not be interfered with; (3) Jones lacked evidence for his claims other than "his unverified statements." Jones did not appeal any of Magistrate Judge Long's decisions denying his motions.

Turning back to Jones's interlocutory appeal, we must first satisfy ourselves of our own jurisdiction. *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 706 (7th Cir. 2014). As should be clear from our description of the procedural history, there is a substantial question whether proceedings in the district court since Jones filed his notice of appeal have now obviated any relief we could provide. "Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *Stone v. Bd. Of Election Comm'rs for City of Chicago*, 643 F.3d 543, 545 (7th Cir. 2011). Jones argues that Judge Bruce made several serious mistakes, including clear mistakes of fact (such as misinterpreting his claim as one about other inmates attacking him). But he continued to ask the district court to reconsider the denial of injunctive relief and to rule on his new requests. Before we could review Judge Bruce's allegedly erroneous decision, Magistrate Judge Long independently addressed Jones's requests for preliminary injunctive relief, and in a new written order ruled that Jones was not entitled to it. Had Jones appealed this later ruling, we could have reviewed it—but reviewing the merits of Judge Bruce's ruling alone would be futile.

Even if Jones were correct that Judge Bruce erred, vacating that decision would have no effect on Magistrate Judge Long's subsequent order denying a preliminary injunction. Magistrate Judge Long's rulings, which Jones did not appeal, are now the law of the case in the district court. Under the law-of-the-case presumption, a court should not reexamine its own rulings unless there is a compelling reason to do so. *See Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997); *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). If we were to vacate the order on appeal, Jones still would be confronted with Magistrate Judge Long's subsequent order, which he would have to persuade the district court, not us, there was reason to revisit.

Though we cannot review the order on appeal, we are troubled that the district court denied Jones's motions without first holding an evidentiary hearing to air the disputed issues of fact on which those motions were based. We further note that while it is now too late for Jones to appeal Magistrate Judge Long's order, Jones is not entirely without recourse: if Jones is ultimately unsuccessful on the merits of his claim, he still may appeal the district court's final judgment in this court.

We DISMISS the appeal for lack of subject matter jurisdiction.